### EVANS ET AL. *v.* EVANS.

[No. 18,078. Filed February 19, 1951. Rehearing denied March 19, 1951. Transfer waived April 9, 1951.]

*George F. Stevens,* of Plymouth; *Keith Campbell,* of Monticello; *E. B. DeVault,* of Kewanna; *James A. Dilts,* of Winamac; and *Fansler, Fauvre, Young & Chambers,* of Indianapolis, for appellants.

*Lynn O'Neal,* of Logansport; and *Cole, Wildman & Cole,* of Peru, for appellee.

ACHOR, J.—This is an action wherein appellee in the court below asked to have herself established as the illegitimate daughter and only child of Charles Evans,

deceased, and further to set aside the will of said Charles Evans on the grounds that (1) it was unduly executed, (2) that the execution of the pretended will and the signature of decedent thereto was made under duress, and (3) that they were procured by fraud. Appellants were legatees under the will.

During the trial numerous witnesses testified they had seen decedent with appellee and that he had made numerous declarations in which he acknowledged her as his daughter before and after the execution of his will in August of 1933.

In view of the conclusion of the court it is not necessary to further recite the evidence in the case on the issue of duress or undue influence. The provision of the will affecting appellee was as follows:

"While I have been accused of being the father of a child of one Jennie Curtis, the name as given to such child being Bettie Louisa Evans, as shown by the records of the Health Officer of Fulton County, Indiana, and while I made a settlement with the said Jennie Curtis, relative thereto, I now hereby deny that I am or was the father of the said Bettie Louisa Evans, and further say, that she is not my child, but will that following my death, my Executor, the Executor of this my last will and testament, shall pay to said Bettie Louisa Evans, or her agent, the sum of One Hundred ($100.00) dollars."

At the conclusion of the trial the jury returned the following verdict:

"We, the jury, find for the plaintiff, Betty Louise Evans, first, that she is the child of Charles Evans and was acknowledged by him in his lifetime as such child, and second, that the will of Charles Evans as probated in the Fulton Circuit Court on April 9, 1946, is invalid and should be set aside and cancelled."

Appellants, among other causes assign as error in their motion for new trial, the giving of appellee's Instruction No. 3, over the objection of appellants, which instruction reads as follows:

"The instrument here in controversy contains what purports to be a denial on the part of Charles Evans that he was the father of Betty Louise Evans. If, however, you find from the evidence that the said Charles Evans on other occasions, both before and after the date of the execution of such purported will, repeatedly acknowledged to others that he was the father of said Betty Louise Evans and manifested affection for her and a pride in his parenthood, and if you further find that he was in fact her father you may take these facts into consideration in determining whether the denial that he was her father as so contained in said instrument and her substantial disinheritance were his free and voluntary act, or whether the same was procured by undue influence or some other improper and wrongful means."

Appellants' objections thereto are as follows:

"The Defendants object to the giving of plaintiff's tendered instruction number 3 on the ground and for the reason that there is no evidence before the Court and Jury which would support inference of undue influence or fraud. Declarations made by the testator at a time other than the time of the execution of the will shall not be considered by the Jury on the question of undue influence, and this instruction invades the province of the Jury by telling them that they may take into consideration the acknowledgment of the Plaintiff by the testator—his manifestations of affection for the child in determining whether or not he was unduly influenced. The law in the State of Indiana requires that such declarations of the testator must have been made at the time of the execution of the will and the declarations and acts of the testator at any other time cannot be considered by the Jury in passing upon the question of undue influence."

The Supreme and Appellate Courts have repeatedly announced and adhered to the rule of law that declarations made by testator before and after the date of the execution of the will are not competent as evidence that the will was procured by undue influence and cannot be considered in determining that issue. *Allman* v. *Malsbury* (1945), 224 Ind. 177, 65 N. E. 2d 106; *Loeser* v. *Simpson* (1942), 219 Ind. 572, 39 N. E. 2d 945; *Crane* v. *Hensler* (1925), 196 Ind. 341, 146 N. E. 577; *Jones* v. *Beasley* (1921), 191 Ind. 209, 131 N. E. 225; *Robbins, Exr.* v. *Fugit* (1919), 189 Ind. 165, 126 N. E. 321; *Ditton* v. *Hart* (1911), 175 Ind. 181, 93 N. E. 961; *Goodbar et al.* v. *Lidikey et al.* (1893), 136 Ind. 1, 35 N. E. 691; *Todd, et al.* v. *Fenton, et al.* (1879), 66 Ind. 25; *Hayes et al.* v. *West et al.* (1871), 37 Ind. 21; *Westfall* v. *Wait* (1905), 165 Ind. 353, 73 N. E. 1098.

Appellee contends that the effect of the decisions is not as broad as the language of the cases might imply. "That declarations of the testator are competent to show the relations existing between the testator and those who are remembered in the will or excluded from its benefits." They quote 68 Corpus Juris, page 767, as authority for the general rule.

"Declarations made either before or after the execution of the will, but not part of the res gestae, are mere hearsay and are not admissible as direct evidence of the exercise of fraud or undue influence. They may be received in evidence, however, to show the state and condition of the testator's mind. They may be admitted to prove or disprove his weakness of mind and consequent susceptibility of undue influence, or his feelings and attitude toward, and relations with, persons mentioned in or excluded from his will, . . ."

This instruction is not limited to a finding as to the "condition of testator's mind" or "his feelings and

attitude toward the relationship with" appellee at the time of the execution of the will. Instead the jury was instructed to *"take these facts into consideration in determining whether* the denial that he was her father as so contained in said instrument (the will) and *her substantial disinheritance were his free and voluntary act, or whether the same was procured by undue influence* or some other improper and wrongful means." The instruction is so worded that testator's declarations regarding appellee before and after the execution of the will are so directly associated with and related to the issue of undue influence as to make them inseparable in the minds of the jury.

Appellee contends that courts of other states have made exceptions to the general rule against the acceptance of declarations by decedent before and after the execution of the will on the issue of undue influence and that Indiana courts have relaxed their position so as to admit such declarations. The cases of *Lavengood* v. *Lavengood* (1947), 225 Ind. 206, 73 N. E. 2d 685, and *Hoopengardner* v. *Hoopengardner* (1935), 102 Ind. App. 172, 198 N. E. 795, are cited as authority.

In the former case (Lavengood), evidence containing statements by testator were admitted not upon the issue of undue influence existing at the time of the execution of the will but upon the theory that the declarations of testator were competent only to disclose the declarations of a third party, by which he sought to influence the testator. They were part of a conversation.

> "Declarations of a testator are sometimes admitted on the ground that they are part of a conversation, the rest of which is competent, as when the other party to the conversation was a legatee." 68 C. J. 771.

Application of the latter case (Hoopengardner), to the facts of this case is dubious. The facts are not clear. The court did specifically instruct the jury that the testimony of the members of the family "should not be considered upon the question of undue influence." Inasmuch as these cases make no reference to the rule which Indiana courts have emphatically affirmed, we do not believe the court intended to modify the long settled Indiana rule,

> "Whatever may be the rule in other states, it has been the established rule in Indiana for many years that the declaration or statements of a testator made at any other time than when he is engaged in the execution of the instrument claimed to be his will, are not competent as evidence that the will was procured by undue influence, and cannot be considered in determining that issue."

*Crane* v. *Hensler, supra;* to like effect see *Hayes* v. *West, supra; Vanvalkenburg* v. *Vanvalkenburg* (1883), 90 Ind. 433; *Conway* v. *Vizzard* (1890), 122 Ind. 266, 23 N. E. 771; *Westfall* v. *Wait, supra; Ditton* v. *Hart, supra; Robbins, Exr.* v. *Fugit, supra; Emry* v. *Beaver* (1922), 192 Ind. 471, 137 N. E. 55. We hold therefore that appellee's Instruction No. 3 was erroneous.

Appellee contends that any error in the instruction was cured by the fact that the court, at appellants' request in a separate instruction, instructed the jury that statements made by the testator regarding appellee "should not be considered upon the question of the proper execution of the will."

It is axiomatic that a bad instruction is not cured by another which correctly states the law. A jury cannot be required to choose between correct and incorrect instructions given by the court. An erroneous instruction can only be cured "by plainly withdrawing the instruction from the jury."

*Wenning et al.* v. *Teeple et al.* (1895), 144 Ind. 189, 41 N. E. 600; *Kaiser* v. *Happel* (1941), 219 Ind. 28, 36 N. E. 2d 784.

Appellee contends further that the giving of the instruction, if erroneous, is not reversible error for the reason that, separate and apart from the declarations of testator regarding appellee, there was ample evidence from which undue influence could be inferred and upon which the verdict could have been supported. Appellee's position in this regard is not tenable. On the evidence in the record it was possible that reasonable men might have reached different conclusions on the question of undue influence. The evidence referred to in the instruction may have been the chief basis for the conclusion reached by the jury. Under such circumstances the instruction cannot be said to be harmless.

Appellant has also objected to several other of appellee's instructions, part of which appear to be argumentative and seriously repetitious.

In view of the error in Instruction No. 3, it is not necessary for us to rule upon the sufficiency of appellants' objections to said instruction or on the question of their proper presentation on appeal. We assume that such errors will not occur on retrial of the case.

Judgment reversed.

NOTE.—Reported in 96 N. E. 2d 688.