## Hatfield v. DeLong et al.

[No. 4,344.   Filed May 26, 1903.]

Religious Societies.—*Expulsion of Member.—Appellate Tribunal.*— Under the provision of the constitution of a religious society, that upon appeal by a member who has been expelled from a local society no person shall sit as a member of the appellate tribunal who sat in judgment at the original trial, members of the local church society, or class, which expelled the member, and who were present at the time of the expulsion, · though not voting, were not eligible as members of the appellate tribunal.

From Huntington Circuit Court; *Levi Mock*, Special Judge.

Suit by John M. Hatfield against Joshua W. DeLong and others. From a judgment for defendants, plaintiff appeals. *Reversed.*

*J. T. Alexander, M. L. Spencer, W. A. Branyan* and *H. B. Spencer*, for appellant.
*J. Q. Cline* and *J. B. Kenner*, for appellees.

BLACK, J.—In this cause a judgment against the appellant was reversed by the Supreme Court, and the court below was required to overrule a demurrer for want of facts to his complaint. *Hatfield* v. *DeLong,* 156 Ind. 207, 51 L. R. A. 751, 83 Am. St. 194. The substance of the complaint there held to be sufficient is set out in the opinion rendered on that appeal. It showed that the appellant, a member of a designated church, was summoned for trial, and the trial resulted in his expulsion from the church; that from this judgment he took an appeal to the next quarterly conference, which, under the organic law of the church, was the highest tribunal of the church to which the cause could be taken; that the organic law of the society provided that on appeal the cause should be tried by a tribunal of five, two to be chosen by the accused, two by the quarterly conference, and the fifth by these four; that no person should sit as a member of this appellate tribunal who sat in judgment at the original trial; and that the decision of a majority of the appellate tribunal should be final. It was shown in the complaint that the appellant chose two competent persons to act as members of the appellate tribunal, and that the appellees, members of the quarterly conference, with the fraudulent purpose of depriving appellant of the benefits of his appeal, selected two of their number who sat in judgment at the original trial to act as members of the appellate tribunal, and these two refused to consider the selection of anyone as the fifth member except a certain person in the conspiracy to deprive the appellant of the benefits of an appeal, whose purpose was to join the other two in denying the appellant a fair hearing; that though there were and are many competent persons to choose from, yet the appellees persisted in upholding the unlawful selections so made. The prayer of the complaint was that the two ineligible persons be enjoined from sitting on the appellate tribunal, and that all the appellees be enjoined from acting in the premises until

two competent persons shall have been selected by the quarterly conference. On the return of the cause to the court below, the appellant, by leave of court, filed an additional paragraph of complaint, which contained substantially the same allegations as the original complaint, with some additional averments which need not be set out for the purposes of our decision. There was an answer of general denial, and upon the trial the court rendered a special finding unfavorable to the appellant, on which judgment was rendered against him, his motion for a new trial having been overruled.

On the former appeal, the court, after stating that in a cause such as this, involving only ecclesiastical questions, as offenses against the faith and teachings of the church or infractions of its discipline, the decision of the spiritual court will be accepted as conclusive by the secular courts, said that this rule presupposes the existence of an ecclesiastical tribunal in accordance with the organic law of the church; that the member of a church is to be regarded as having consented that, for all spiritual offenses and infractions of the rules of ecclesiastical discipline, he will abide by the judgment of the highest tribunal organized under the constitution of the church, yet that he can not be compelled to submit his final appeal in such a case to a tribunal organized in defiance of the constitution of the church, but may avoid such submission by appeal to the secular courts; that in such case the secular court assumes that the constitution of the church was intended to be binding upon the church as well as upon its accused member, as in the case of a similar controversy between a voluntary association, such as fraternal orders and social clubs, and a member thereof; and that as an unlawful expulsion from his church would affect the member's standing in the community and accomplish an injury for which there is no adequate remedy at law, injunction is the proper remedy.

The quarterly conference chose as arbiters to serve on the appellate tribunal Mary Kunce and Frank Cable, appellees. The judgment of expulsion from which the appeal was taken was rendered by the local church society, or class, of which these persons and the appellant were members, at a meeting of the members of the local society held for the purpose of trying the appellant for disobedience to the order of the church. The book of discipline of the church, providing for the taking of an appeal by a member dissatisfied with the decision, provided that in such case, the same person shall not sit in judgment on the same case.

It is contended on behalf of the appellant that the evidence shows that neither of the persons selected by the quarterly conference was eligible as an arbiter, for the reason that they were disqualified by their participation in the trial by the church meeting. If either of the persons was so disqualified, the appellate tribunal was unlawfully constituted. Mary Kunce, as already observed, was a member of the local society, or class, and attended the meeting of the society at which the trial was held and the judgment of expulsion was rendered. She accompanied her husband, who also was a member, and they were present together during all the proceedings of the meeting. They knew that the meeting was to be held for the purpose of such trial, and they went to the meeting for the purpose of being present as members of the church at the trial. The voting upon the question of expulsion was by ballot, the votes of the members being indicated on slips of paper, which were distributed through the congregation. She and her husband each received one of the slips of paper. He voted against the appellant, but she dropped her paper on the floor, and did not vote. She took no active part in the meeting other than being purposely present at the trial as a church member. She purposely abstained from casting a vote. She had the right and the opportunity to vote.

She testified that she did not vote simply because she "didn't want to." Nearly all the other members voted. We think the rule of the book of discipline providing, in relation to such an appeal, that the same person shall not sit in judgment on the same case, contemplates the creation of an appellate body entirely distinct from the trial body. The purpose of the provision manifestly is to secure an impartial consideration by an appellate tribunal composed entirely of persons wholly disinterested and uncommitted and uninfluenced, who are free from the impressions of the earlier proceedings against the accused. Mrs. Kunce was a member of the trial body, present in her capacity of a trier at the trial, and the fact that she abstained from voting upon the final decision of that body, however influenced or actuated to do so, did not make her such a stranger to the trial as the fundamental law of the church set forth in its book of discipline contemplates in its true meaning and purpose. She was not eligible to the office of arbiter.

The other member appointed by the quarterly conference, Frank Cable, was a member of the society and entitled to participate in the trial and to vote upon the finding of the meeting. He was present at the meeting, though he was not there at the opening of the proceedings. He knew the purpose of the meeting and his rights therein as above stated. He was present when the vote of expulsion was taken and for some time before that action of the meeting. He was part of the congregation which held the trial, and he so far took part in the proceedings as to raise his hand in response to a request of the appellant for all persons who did not vote to give such indication thereof. He thus acknowledged his participation as a member of the meeting, and indicated that he regarded himself as one having a right to take part in its proceedings. While his ineligibility is not so fully manifested as that of the other member appointed by the quarterly conference, yet

he was, we think, excluded from the right to sit as arbiter in review of the trial by the rule of church discipline, construed according to its purpose and legitimate meaning. The evidence showed that there were many other persons eligible as arbiters. These two members appointed by the quarterly conference were no less disqualified for participation in the selection of a fifth arbiter than from participation in the hearing of the appeal, and a fifth arbiter in whose selection they should take part would be without the qualification of an election according to the law of the church.

The finding that the two persons chosen by the quarterly conference were competent and eligible persons to sit as arbiters was not sustained by sufficient evidence.

Judgment reversed; cause remanded for a new trial.